IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOL SPATES and WESLEY LEWIS Individually and on Behalf Of a Class of Similarly Situated Individuals,<br><br>            Plaintiffs,<br><br>    v.<br><br>ROADRUNNER TRANSPORATION SYSTEMS, INC., and ADRIAN CARRIERS, LLC,<br><br>            Defendants. | Case No. 15 C 8723<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Plaintiffs' Motion to Certify Class [ECF No. 35]. For the reasons stated herein, the Court grants Plaintiffs' motion.

### I. BACKGROUND

The Plaintiffs, Sol Spates and Wesley Lewis (collectively, the "Plaintiffs") worked as truck drivers for the Defendant delivery companies Roadrunner Transportation Systems, Inc. and Adrian Carriers, LLC (collectively, the "Defendants"). Plaintiffs allege they were improperly classified as independent contractors rather than employees of Defendants, and that Defendants consequently made illegal deductions from their pay in violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq*. Plaintiffs move to certify the following class consisting of themselves and about 108 other

individuals similarly situated: "All persons who have worked for the Defendants as delivery drivers in Illinois at any time during the applicable limitations period and who have been classified as independent contractors rather than employees." Pl. Am. Compl. ¶ 27.

The following allegations are drawn from Plaintiffs' Amended Complaint and various exhibits; where there are factual disputes material to class certification, the Court will so note and resolve the disputes, as it is required to do at this stage. *See, Messner v. Northshore University Health System,* 669 F.3d 802, 811 (7th Cir. 2012).

As a condition to entering Defendants' service, Plaintiffs had to sign an "independent contractor agreement," which explicitly classified them as independent contractors. Plaintiffs write: "Defendants required that Plaintiffs and similarly situated drivers provide their own truck, which the drivers, through Defendants, either own or lease." Pl. Am. Compl. ¶ 14. The trucks bore Defendant Adrian Carriers' Department of Transportation identification number and Adrian Carriers' logo on the cabs.

Plaintiffs claim that although they all signed agreements classifying them as independent contractors, Defendants controlled most aspects of their work in a manner suggestive of an employer-employee relationship. For example, each of Defendants' drivers contact a dispatcher based in Joliet, Illinois every morning to receive their delivery assignments. The dispatcher instructs the drivers on which chassis and container to pick up, when to do so, and where to deliver. In performing this work, Plaintiffs claim (1) that

they followed Defendants' policies and procedures, both written and unwritten; (2) that Plaintiffs had no control over the timing, location, and content of deliveries, nor the cost of their services; (3) that Defendants assigned managers to supervise the work of the Plaintiffs; (4) that Defendants required Plaintiffs to purchase GPS-equipped communication devices for their trucks that would allow Defendants to track deliveries and give instructions; (5) that Plaintiffs had to submit to periodic background checks and drug tests; (6) that Plaintiffs had to obtain insurance of Defendants' choosing; (7) that Defendants required Plaintiffs to give 24-hour notice before taking a day off; and (8) that if Plaintiffs refused an assignment or attempted to perform delivery services for another company, Defendants would terminate their employment.

The distinction between an independent contractor and an employee matters to Plaintiffs in this case because the State of Illinois provides certain protection to employees, but not independent contractors, under the Illinois Wage Payment and Collection Act ("IWPCA"). *See, Marcus & Millichap Inv. Servs. v. Sekulovski,* 639 F.3d 301, 310 (7th Cir. 2011) (applying Illinois law). The IWPCA safeguards Illinois employees' timely and complete compensation as guaranteed under an employment agreement. *See, Enger v. Chicago Carriage Cab,* 77 F.Supp.3d 712, 715-16 (N.D. Ill. 2014). Of particular interest to Plaintiffs is the IWPCA's Section 9, which provides (in relevant part):

> [D]eductions by employers from wages or final compensation are prohibited unless such deductions are (1) required by law; (2) to the benefit of the employee; (3) in response to

>       a valid wage assignment or wage deduction order; [or] (4)
>       made with the express written consent of the employee,
>       given freely at the time the deduction is made . . . .

820 ILCS 115/9. Plaintiffs claim that they (and all members of the class) were not paid proper wages and that improper deductions were made from their wages in violation of this section of the statute.

## II. ANALYSIS

As a threshold matter, Plaintiffs must satisfy all the requirements set forth in Federal Rule of Civil Procedure Rule 23(a) in order to certify their putative class: numerosity, commonality, typicality, and adequacy of representation. *See, Siegel v. Shell Oil,* 612 F.3d 932, 935 (7th Cir. 2010). In addition, because they seek class certification pursuant to Rule 23(b)(3), Plaintiffs must show that questions of law and fact common to members of the class predominate over questions affecting individuals (referred to as the "predominance requirement"). *See, Messner,* 669 F.3d at 808, 815. Plaintiffs have satisfied their burden on all counts.

### A. Numerosity

First, numerosity: there must be so many members of a putative class that joinder of all the individual plaintiffs is impractical. *See,* FED. R. CIV. P. 23(a)(1). There is no magic number; however courts have held repeatedly that at least 40 class members is generally sufficient. *See, e.g., Oplchenski v. Parfums Givenchy, Inc.,* 254 F.R.D. 489, 495 (N.D. Ill. 2008) (collecting cases). Plaintiffs in the present case allege that their class contains as many as 108 truck drivers wrongly classified as independent contractors. There is no suggestion that their estimate is made in bad faith, and Defendants do

not quibble with it. Plaintiffs' proposed class thus satisfies the numerosity requirement.

### B. Typicality

Rule 23(a) further requires that "the claims or defense of the representative parties are typical of the claims or defenses of the class." FED. R. CIV P. 23(a)(3). The inquiry here is relatively simple: "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory." *Oshana v. Coca-Cola,* 472 F.3d 506, 514 (7th Cir. 2006) (internal citation and quotation omitted). Each potential class member is a truck driver, working for the same Defendants, and each signed the independent contractor agreement. They all make the same claims under the IWPCA. Defendants do not argue against the typicality of the claims. This element of the Rule is satisfied.

### C. Adequacy of Representation

The Court must determine also whether "the representative parties [Plaintiffs Spates and Lewis] will fairly and adequately protect the interests of the class." Rule 23(a)(4). Plaintiffs easily meet this standard, and again, Defendants do not contest it. Spates and Lewis do not have interests that conflict with the other truck drivers; they each have demonstrated their shared stake in this case through their answers to discovery and their testimony in depositions. Finally, there is no indication that Plaintiffs' attorneys lack the competency to try this case – they have prior experience with very similar claims and have successfully pursued certification of many classes. The

adequacy requirement is satisfied. *See, Gammon v. GC Servs. Ltd.*, 162 F.R.D. 313, 317 (describing the elements of adequacy and collecting cases).

### D. Commonality

Rule 23(a)(2) requires that there are questions of law or fact common to the class sufficient to justify class-wide adjudication of the claims. In other words, the claims of all members must "depend upon a common contention," and "the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Chicago Teachers Union v. Board of Educ.*, 797 F.3d 426, 434 (7th Cir. 2015).

Here, the contention that Plaintiffs were employees rather than independent contractors is amendable to class-wide treatment. Under the IWPCA, Plaintiffs are not considered employees if all of the following conditions are met: "(1) [Defendants] did not exert control and direction over the performance of [Plaintiffs'] work, (2) [Plaintiffs] performed [] work outside all of [Defendants'] places of business, and (3) [Plaintiffs were] in an independent established trade, occupation, profession or business." *Marcus & Millichap*, 639 F.3d at 310 (applying Illinois law). Crucially, Defendants are required to prove that Plaintiffs satisfy all three conditions in order to successfully argue Plaintiffs were independent contractors. That means if just one of the criteria is provable by common evidence, this question is amenable to class treatment. *See, Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1060 (7th Cir. 2016).

Each part of the test entails evidence that will apply equally to all class members. Relatedly, each driver is similarly situated with respect to the criteria to be evaluated. For example, the degree of control Defendants exercised over their drivers (the first prong of the test) is largely a matter of company policy, and company policies will apply more or less equally to each driver. Defendants make the error of arguing the merits of this question, devoting almost three full pages in their brief to explaining why they do not exercise the requisite control over Plaintiffs. It is the nature of the evidence, and whether it is common to the class, that matters – the issue of whether the evidence actually shows Plaintiffs acted as independent contractors is not relevant at this stage. *See, Blades v. Monsanto,* 400 F.3d 562, 567 (8th Cir. 2005) ("[D]isputes may be resolved only insofar as resolution is necessary to determine the nature of the evidence that would be sufficient, *if the plaintiff's general allegations were true*, to make out a prima facie case for the class.") (emphasis added).

So the question of whether the class members are employees versus independent contractors is a common question "that resolves an issue . . . central to the validity of each claim" (namely, the issue of whether class members are entitled to the IWPCA's protection). And just a single common question will do to satisfy commonality. *See, Wal-Mart Stores v. Dukes,* 564 U.S. 338, 359 (2011). But that does not settle the matter.

## E. Predominance

In addition to showing commonality, Plaintiffs must convince the Court that "questions of law or fact common to class members *predominate* over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3) (emphasis added). The predominance requirement is similar to commonality, but more stringent. Predominance "requires a qualitative assessment . . . [and] 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Butler v. Sears, Roebuck and Co.,* 727 F.3d 796, 801 (7th Cir. 2013) (quoting *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623 (1997)).

Asking whether common questions predominate requires the Court to consider what else Plaintiffs must prove to win their case. Proving that class members were employees is a necessary condition for Plaintiffs to prevail, but it is not a sufficient one. "[T]he IWPCA does not provide a cause of action for damages based on the mere mischaracterization of an employee as an independent contractor." *Enger,* 77 F.Supp.3d at 715 n.3. So Plaintiffs will need to prove, eventually, that Defendants actually ran afoul of the IWPCA. They may do this by showing that Defendants withheld compensation owed to them under the terms of an agreement, or by showing that Defendants made unlawful deductions from their pay in violation of Section 9 of the statute. *See, id.* at 717 (noting that the IWPCA "does not grant any independent right to payment of wages and benefits" other than those guaranteed in a separate agreement) (internal citation and quotation omitted). Plaintiffs focus exclusively on deductions in their briefing, so the Court will do the same in this opinion.

Recall that the IWPCA generally prohibits deductions from employees' compensation, but allows for deductions that are "to the benefit of the employee" or "made with the express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9. Plaintiffs contend that "all contractors suffered the same types of deductions, which are outlined in the independent contractor agreements, and clearly listed on their pay statements." Pl. Br. at page 20. The Court has examined the documents cited by Plaintiffs. The pay statements list some of the same recurring deductions, such as deductions for fuel, license, liability insurance, tolls, and repairs. *See,* Pl. Br. Ex. Q. The independent contractor agreement, similarly, contains scattered references to deductions that the employer is authorized to make. *See,* Pl. Br. Ex. H.

Defendants protest that Plaintiffs authorized at least some deductions, and that the proof related to that contention is so individualized as to destroy the potential for class treatment. For example, Defendants cite the deposition of Plaintiff Spates. Spates testified he understood at the time he signed the independent contractor agreement that he would be responsible for paying certain expenses associated with operating his truck. *See,* Spates Dep. 80:20-23. Spates explicitly admitted that certain deductions were authorized in the agreement, and that he authorized them as "standard expenses." *See,* Spates Dep. 81:13-21. He checked his statements every week to make sure the deductions were accurate, and agreed that there were only one or two times that he believed he had not authorized deductions. *See,* Spates Dep. 171:8-17. Plaintiff Lewis,

on the other hand, testified that he authorized every deduction from his pay except a cargo deduction and a maintenance deduction. *See,* Lewis Dep. 102:3-18.

Relying on this testimony, Defendants argue that Plaintiffs' own statements suggest that they authorized some deductions and not others, and that individualized testimony is required to determine authorization as to each class member. That is incorrect. The IWPCA requires that deductions be authorized "in writing." It does not matter what Spates, Lewis, or any putative class member thought they had authorized; what matters is whether they actually did authorize a deduction, which is provable by the same common evidence: the independent contractor agreement. Nor does it matter whether Spates or Lewis believed the deductions were for their benefit. The pay statements and independent contractor agreement suggest that the deductions fall into recurring categories common to all class members, which means that the question of who benefits may be answered on a class-wide basis.

The parties disagree on one final matter pertinent to predominance: whether Defendants Adrian Carriers and Roadrunner are "joint employers" under the IWPCA such that Plaintiffs may sue both for violation of the statute (Roadrunner is the parent company of Adrian Carriers). Defendants again attempt to argue the merits of the question rather than addressing whether it can be answered through common evidence. Criteria courts consider to determine whether a defendant is a joint employer include "the putative joint employer's role in hiring and firing; promotions and demotions; setting wages,

work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job." *Zampos v. W&E Comm.*, 970 F.Supp.2d 794, 806 (N.D. Ill. 2013) (internal quotation and citation omitted). Once again, these are questions that can be answered through common evidence regarding Defendants' policies and procedures. And there is no suggestion that Defendants' policies apply differently among individual class members. Thus, the joint employers issue does not upset predominance.

To emphasize, the Court is not commenting on the merits of the case in any of the above analysis. For example, it could be that the independent contractor agreement proves that Plaintiffs expressly agreed in writing to all relevant deductions, which would obviate IWCPA protection. The Court merely holds that the proof relevant to deductions will be common to all class members, such that Rule 23(b)(3)'s predominance requirement is satisfied.

### III. CONCLUSION

Having found Plaintiffs satisfy all of Fed. R. Civ. P. 23(a)'s requirements, and the predominance requirement under 23(b)(3), Plaintiffs' Motion to Certify Class [ECF No. 35] is granted.

**IT IS SO ORDERED.**

                                                Harry D. Leinenweber, Judge
                                                United States District Court

Dated: December 23, 2016